UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
TRACY FLANAGAN,                       :    CIVIL ACTION NO.:
                                      :
         Plaintiff,                   :    3:21-cv-00770 (   )
                                      :
v.                                    :
                                      :
TRADER JOE'S EAST, INC. d/b/a         :
TRADER JOE'S                          :
                                      :
         Defendant.                   :    JUNE 4, 2021
-------------------------------------------------------x
```

## COMPLAINT

**I.  INTRODUCTION**

1. Defendant Trader Joe's East, Inc. d/b/a Trader Joe's ("Trader Joe's" or the "Company") employed Tracy Flanagan for almost 12 years until it terminated her. She brings this action to redress injuries she suffered because of Defendant's discriminatory treatment, in violation of Title VII, (42 U.S.C. §2000 *et. seq*.) and the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. §46a-60, *et. seq*.).

**II.  JURISDICTION**

2. Jurisdiction is conferred on this Court by 42 U.S.C. §2000 *et. seq*., as amended by the Civil Rights Act of 1991 and 28 U.S.C. §1331. Ms. Flanagan requests this Court to exercise supplemental jurisdiction over her state law claims, under 28 U.S.C. §1367.

**III.  VENUE**

3. Under 28 U.S.C. §1391(b)(1) and (2), venue is proper within this District because Defendant is present in Connecticut and a substantial part of the conduct underlying Ms. Flanagan's claims occurred in Connecticut.

**IV.     PARTIES**

4.   Ms. Flanagan is a woman living in Stratford, Connecticut, employed by Defendant from April 30, 2008 until March 18, 2020.

5.   Defendant is a company that maintains numerous business locations in Connecticut and throughout the United States.  Its corporate headquarters is in Monrovia, California. Defendant employs over 15 full-time employees and is an employer within the meaning of Title VII (42 U.S.C. §2000) and the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. §46a-60, *et. seq*.).

**V.      EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6.   Ms. Flanagan filed timely complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and federal Equal Employment Opportunities Commission ("EEOC") on September 23, 2020, alleging that Defendant engaged in an ongoing and continuing pattern of gender discrimination.  She alleged that Defendant engaged in such treatment when it terminated her and contributed to her termination.

7.   Ms. Flanagan requested a Release of Jurisdiction and a Right to Sue letter from the CHRO and EEOC on March 23, 2021 and received it on or about March 24, 2021.  Ms. Flanagan has filed the instant Complaint within 90 days of her receipt of the Right to Sue letter.

**VI.     FACTS**

8.   Trader Joe's hired Ms. Flanagan on April 30, 2008. based on her extensive retail management background.

9.   The reporting chain of employment at Trader Joe's is:

"Crew"                          Employee

"Merchant"                Customer Experience Champion

| | |
|---|---|
| "Mate" | Assistant Store Manager |
| "Captain" | Store Manager |
| Regional Vice Presidents | Supervisors of overall operation of multiple Trader Joe's stores in each of the company's 28 Regions. |
| Executive Vice Presidents | Overall supervisors of several Regional Vice Presidents |
| Senior Vice President | "C-Ring" position |
| Chief Executive Officer | Dan Bane |
| President | Jon Basalone |

10. After Trader Joe's hired Ms. Flanagan, she worked in several of its stores. She supported a Captain in the opening of a new store in Rhode Island and, in 2009, performed the duties of a demoted Captain in the Arlington Massachusetts, store and the Captain in the Hanover, Massachusetts, store who was on maternity leave.

11. In 2009, Defendant promoted Ms. Flanagan to Captain. She was responsible for opening a high-profile Trader Joe's store in Cambridge, Massachusetts, near the Trader Joe's East Coast home office. Her superiors told her that her promotion to Captain was the fastest such promotion in the history of the company.

12. After her promotion to Captain, in 2010 the Executive Vice President (EVP) with overall responsibility for her area selected her to open a high-volume store with a high profile in Maine. This was the first store Trader Joe's opened in Maine.

13. After opening the store in Maine in 2011, Defendant named Ms. Flanagan a "Captain of the Year."

14. In February 2012, Trader Joe's promoted Ms. Flanagan to Regional Vice President and transferred her to Trader Joe's Mid-Atlantic Region. Her Region included all Trader Joe's stores in Virginia, Maryland, and the District of Columbia.

15. Ms. Flanagan supported the Crew, Merchants, Mates and Captains as Mid-Atlantic Regional Vice President. She delivered double-digit year over year comparative sales increases in her first two years and in the third year, a comparative sales increase of 7%. She also successfully opened a store in the Washington DC area in 2014.

16. In March 2015, Trader Joe's appointed Ms. Flanagan Regional Vice President in Defendant's newly restructured Northeast Region. Trader Joe's made her responsible for all Trader Joe's stores in Connecticut and New York (excluding New York City).

17. In 2015, 2016, 2017, 2018 and 2019, Trader Joe's recognized Ms. Flanagan as having one of the top sales volumes and growth in the Company, with consistent year over year comparative sales averaging a growth of 7.5%.

18. Ms. Flanagan's Executive Vice President told Ms. Flanagan she received one of the highest bonuses during 2016 through 2019 as a Regional Vice President.

19. Among other acknowledgments of Ms. Flanagan's performance, on January 20, 2017, Trader Joe's selected Ms. Flanagan to participate in and represent Defendant at the Annual Rose Bowl Parade in Pasadena, California – an exceptional honor at Trader Joe's.

20. In March 2019. Ms. Flanagan's Executive Vice President asked her to select a women's leadership conference in Boston, Massachusetts for several of the Regional teams to attend. She coordinated the attendance of the six other company Regional Vice Presidents to attend the conference and report what they learned to the Executive Vice President.

21.     In June 2019, Trader Joe's selected Ms. Flanagan to represent it on a bonus trip to Italy to meet vendors. This was also considered a high honor at Trader Joe's.

### Discovery of Theft

22.     In November 2019, Ms. Flanagan discovered that a Mate (Assistant Manager) was embezzling Trader Joe's funds by processing fraudulent refunds. She discovered the misappropriation while spot-checking bi-weekly reports of store activity generated by MIS (*i.e.,* Management Information Services – Help Desk).

23.     Other Regional Vice Presidents told Ms. Flanagan that none of the Regional Vice Presidents, all of whom were similarly situated to her, reviewed these reports regularly.

24.     Ms. Flanagan asked the Trader Joe's MIS team to run reports to enable her to isolate the misappropriation as soon as she identified the fraudulent activity,

25.     When Ms. Flanagan reviewed the research she requested, she confirmed the theft and immediately reported her discovery to her Executive Vice President.

26.     Ms. Flanagan also asked for additional information from the MIS team and contacted the Trader Joe's Human Resources Department Vice President to brief her about the theft. The HR VP reviewed the information Ms. Flanagan provided in addition to some additional summaries.

27.     Ms. Flanagan also contacted Trader Joe's General Counsel and sought advice on how to proceed regarding the theft.

28.     During Ms. Flanagan's employment at Trader Joe's, when an employee was discovered stealing from the company, Trader Joe's' practice was to terminate the employee. In addition to the termination, Ms. Flanagan wanted to refer the dishonest Mate to the authorities for criminal prosecution.

29. The Mate responsible for the thefts met with Ms. Flanagan after Ms. Flanagan compiled additional evidence establishing the Mate's thefts. The Mate admitted the thefts and provided Ms. Flanagan with a written statement confessing what he had done during that meeting. She told the Mate to expect that Trader Joe's would pursue criminal charges against him and he said he understood. He cooperated with Ms. Flanagan and apologized because, he said, he did not want his dishonesty to reflect poorly on Ms. Flanagan or his Captain. Trader Joe's terminated the Mate.

30. Trader Joe's authorized Ms. Flanagan to refer the case to the police for criminal prosecution..

31. The former Mate was arrested and formally charged based on the evidence uncovered by Ms. Flanagan. Trader Joe's is seeking full restitution from the Mate. based on the arrest and charge.

32. Trader Joe's review of reports confirmed that many of the Regional Vice Presidents reviewed the reports in the same way as Ms. Flanagan.

33. On December 2, 2019, Trader Joe's issued a written warning to Ms. Flanagan for failing to review the reports and identify the theft sooner. The language of the warning incorrectly implied that the _company_ discovered the theft and brought it to _Ms. Flanagan's attention_. Ms. Flanagan signed the Incident Report regarding the theft on December 2, 2020 because her EVP assured her that the company and Ms. Flanagan would be "moving forward."

34. On or about December 16, 2019, Trader Joe's issued an "amended" Incident Report to Ms. Flanagan that stated she needed to complete an educational process to remain a Regional Vice President. Her EVP said this "amended" Incident Report was ultimately his decision, but he also said he believed in her.  Soon afterward, Ms. Flanagan and her EVP visited several stores

together and he told her "that was it," referring to the Incident Reports. Ms. Flanagan sent weekly recaps about her report findings, conversations with her Captains, and any follow up with her EVP's office as instructed.

35. Ms. Flanagan's EVP asked her to share her weekly recaps and best practices with several of the other Regional Vice Presidents, which she did.

36. Ms. Flanagan trained her team on the bi-weekly reporting, spoke with each Captain by telephone, held one-on-one training sessions with the Captains, and conducted follow-up group meetings with them to make sure each understood how to read the reports, what to look for, and to discuss best practices.

37. On February 2, 2020, Ms. Flanagan's EVP told her he was confident that she knew what to look for and would continue to do so, and she no longer needed to send the weekly reports,

38. On March 4, 2020, Ms. Flanagan spoke with her regular EVP by telephone. She reminded him she was going on vacation soon to celebrate her first wedding anniversary. He asked her to send him a follow-up email because he had forgotten several vacations that year. Ms. Flanagan sent him the requested follow-up email.

39. On March 10, 2020, Ylana Ebba, a fellow Regional Vice President, agreed to cover for Ms. Flanagan while she was on her anniversary vacation. Ms. Flanagan agreed to cover for Ms. Ebba if their annual Regional trip was cancelled in the coming April and again in July, as she and Ms. Flanagan frequently covered for each other.

40. On March 15, 2020, Ms. Flanagan emailed Executive Vice President Ben Myers (who was standing in for Ms. Flanagan's regular Executive Vice President while he was out sick) the night before she was scheduled to leave to make sure *he* knew she would be away. Ms.

7

Flanagan had not discussed this with Mr. Myers because her EVP and other necessary people already knew about the vacation, knew her duties would be covered, and authorized the vacation.

41. On March 16, 2020, Ms. Flanagan left for her one-week first anniversary vacation. She continued to work while on vacation that Monday, Tuesday and Wednesday morning via telephone and email.

42. On March 18, 2020, Ms. Flanagan received a text message from Executive Vice President Ben Myers advising her she was terminated effective immediately. The text stated: *"Tracy, based on [your] recent performance and decision to take a vacation during the current circumstances, we are ending your employment effective today. We will work out a time to gather your equipment when you get back into the country. Feel free to call/text me or Laurie Mead [HR VP] if you have any questions. Ben"*

43. Ms. Flanagan called Mr. Myers immediately and he told her the decision to terminate her was final.

44. On March 20, 2020, Ms. Flanagan sent a letter to Trader Joe's President, Jon Basalone, asking him to reconsider her termination. He replied that the decision was final.

45. On April 13, 2020, Ms. Flanagan sent a letter to the VP Human Resources and asked for a review of the termination. She also told Ms. Flanagan the decision was final.

### Disciplinary Treatment of Similarly Situated Males at Trader Joe's

46. Trader Joe's long-standing practice and policy is inconsistent with the decision to terminate Ms. Flanagan. Defendant's policy about discipline is to preserve and salvage employees who benefit the company and have shown themselves to be valuable assets.

47. Trader Joe's customary practice is to demote an employee and, sometimes, require him to participate in a performance improvement plan instead of terminating him. The majority of employees who have benefitted from this Trader Joe's policy and practice are male.

48. Numerous male Regional Vice Presidents with negative performance issues were demoted and reassigned, but not terminated. Examples are:

    a.    <u>Michael Krause</u>

Trader Joe's demoted Mr. Krause, male, from Regional Vice President to Captain in 2019.  On information and belief, he had multiple years of engagement issues with his team and was not in his stores enough, among other issues.

    b.    <u>Greg Paquet</u>

Trader Joe's demoted Mr. Paquet, male, from Regional Vice President to Facility Manager in approximately 2018.  On information and belief, it demoted Mr. Paquet because he was not in his stores enough, had abused the expense card privileges, and his Region in Texas was significantly underperforming.

    c.    <u>Rory Violette</u>

Trader Joe's demoted Mr. Violette, male, from Regional Vice President to Captain in approximately 2014.  On information and belief, Trader Joe's management found that he was not in his stores on a regular basis, had abused the expense card privileges and argued with CEO Dan Bane.  On information and belief, in or about 2020, Mr. Violette publicly disparaged Mr. Bane and the Chairman's Group during remarks Mr. Violette made in his 25-year anniversary speech before an audience of approximately 500 company leaders at the annual Captains meeting,  On information and belief, Mr. Violette was not disciplined and is still employed.

d.  Rich Millis

Trader Joe's demoted Mr. Millis, male, from Regional Vice President to Captain in approximately 2014 or 2015. On information and belief, Trader Joe's Management determined that he was underperforming and not in his stores enough. Mr. Millis voluntarily resigned after being demoted.

e.  Jay Hughes

Trader Joe's demoted Mr. Hughes, African-American male, from Regional Vice President to Captain because he under-performed. He was not terminated.

49. One of the "reasons" Trader Joe's gave to Ms. Flanagan for her termination was that she took her first wedding anniversary vacation inappropriately. The explanation was pretextual and inconsistent with how similarly situated male Regional Vice Presidents have been treated.

50. Perry Zetterstens and Chris Maguire are male Regional Vice Presidents who took vacations during the Coronavirus pandemic and were not terminated.

51. After her termination, Trader Joe's divided Ms. Flanagan's Region and covered it by men. She was replaced by a male in his 30's on June 18, 2020.

VII.  **COUNT ONE – Gender Discrimination in Violation of Title VII, 42 U.S.C. §2000e, *et. seq.***

52. The decision to terminate Ms. Flanagan discriminated against her because of her sex. Her termination contradicted long-standing corporate practice and policy which as practiced favored males in comparable positions, contradicted assurances her EVP gave her and disregarded approvals that allowed her to celebrate her first wedding anniversary.

53. Ms. Flanagan's gender was a factor which made a difference in Defendant's treatment, in violation of Title VII, 42 U.S.C. §2000e, *et. seq.*

57. Because of Defendant's discriminatory treatment, Ms. Flanagan has suffered and continues to suffer economic and emotional harm.

## VIII. COUNT TWO – Gender Discrimination in Violation of Conn. Gen. Stat. §46a-60, *et. seq.*

58, The plaintiff incorporates by reference each and every allegation in the preceding Paragraphs 1 through 57.

58. Ms. Flanagan's gender was a factor which made a difference in Defendant's treatment of her, in violation of Conn. Gen. Stat. §46a-60, *et. seq.*

58. Because of Defendant's discriminatory treatment, Ms. Flanagan has suffered and continues to suffer economic and emotional harm.

**WHEREFORE**, Ms. Flanagan respectfully prays that this Court take jurisdiction over her case and:

1. Issue a declaratory judgment regarding the Plaintiff that the Defendant violated 42 U.S.C. §2000 *et. seq.*;

2. Award the Plaintiff the economic damages she has suffered to date and which she will continue to suffer, including lost past and future pay, benefits and other compensation;

3. Award the Plaintiff compensatory and punitive damages under 42 U.S.C. §2000 *et. seq.* and Conn. Gen. Stat. §46a-60, *et. seq.*;

4. Order the Defendant to reimburse the Plaintiff for the reasonable attorneys fees and costs she incurred in prosecuting Counts One and Two;

5. Award the Plaintiff interest on her lost economic damages, pursuant to Conn. Gen. Stat. 37-3a; and

6. Award the Plaintiff such other equitable relief as the Court deems appropriate.

                    **RESPECTFULLY SUBMITTED,**
                    **THE PLAINTIFF**
                    **TRACY FLANAGAN**

By: /s/ *Joseph D. Garrison*

Joseph D. Garrison  *(Fed. Bar #:  ct04132)*
Ethan Levin-Epstein  *(Fed. Bar #:  ct01566)*
GARRISON, LEVIN-EPSTEIN,
    FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT  06511
Tel.: (203) 777-4425
Fax: (203) 776-3965
jgarrison@garrisonlaw.com
elevin-epstein@garrisonlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ---------------------------------------------------------x | | |
| **TRACY FLANAGAN,** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff,** | : | **3:21-cv-00770 (    )** |
| | : | |
| v. | : | |
| | : | |
| **TRADER JOE'S EAST, INC. d/b/a** | : | |
| **TRADER JOE'S** | : | |
| | : | |
| **Defendant.** | : | **JUNE 4, 2021** |
| ---------------------------------------------------------x | | |

## JURY TRIAL CLAIM

The Plaintiff, Tracy Flanagan, claims a trial by jury on all claims triable by jury.

                  **RESPECTFULLY SUBMITTED,**
                  **THE PLAINTIFF**
                  **TRACY FLANAGAN**

By: /s/ *Joseph D. Garrison*
      Joseph D. Garrison  *(Fed. Bar #: ct04132)*
      Ethan Levin-Epstein  *(Fed. Bar #: ct01566)*
      GARRISON, LEVIN-EPSTEIN,
          FITZGERALD & PIRROTTI, P.C.
      405 Orange Street
      New Haven, CT  06511
      Tel.: (203) 777-4425
      Fax: (203) 776-3965
      jgarrison@garrisonlaw.com
      elevin-epstein@garrisonlaw.com