UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
TRACY FLANAGAN,                                  :
                                                 :
                      Plaintiff,                 :    **MEMORANDUM &**
                                                 :    **ORDER GRANTING**
       -against-                                 :    **DEFENDANT'S MOTION**
                                                 :    **FOR SUMMARY**
TRADER JOE'S EAST, INC.,                         :    **JUDGMENT**
                                                 :
                      Defendant.                 :    3:21-CV-00770 (VDO)
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

The plaintiff Tracy Flanagan has brought this action alleging that the defendant Trader Joe's East, Inc. ("Defendant" or "Trader Joe's") discriminated against her on the basis of her gender when it terminated her from her executive-level position as Regional Vice President for the Northeast Region in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Defendant seeks summary judgment with respect to both counts of discrimination, contending that the plaintiff is unable to establish circumstances giving rise to an inference of gender discrimination, and that there was a legitimate, nondiscriminatory reason for the plaintiff's termination.

For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

I.     **BACKGROUND**

       A.     **Factual Background**

The following facts are taken from Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 30-2), Plaintiff's Local Rule 56(a)2

Statement of Facts in Opposition to Summary Judgment ("Pl.'s 56(a)," ECF No. 34-1), and the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 345 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.[1]

Plaintiff was hired by Trader Joe's in 2008 and was promoted to the role of Captain (store manager) in 2009. (Def.'s 56(a) ¶¶ 1, 2.) She was named "Captain of the Year" for opening a high-profile, high-volume store in Maine in 2011. (*Id.* ¶ 3.) In 2012, Plaintiff was promoted to Regional Vice President ("RVP") for the Mid-Atlantic Region and was responsible for overseeing all Trader Joe's stores in Virginia, Maryland, and Washington, D.C. (Compl., ECF No. 1., ¶ 14.) Subsequently, Plaintiff pivoted to her role as RVP for the Northeast Region in 2015, thereby becoming responsible for all Trader Joe's stores in Connecticut and New York, excluding New York City (*id.* ¶ 16), until her termination. (*Id.* ¶ 42.)

---

[1] Where the parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts . . . which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact." *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (internal citation omitted); *see also Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 351 (D. Conn. 2022) (finding that plaintiff's 56(a)2 Statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts"); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)1 Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments).

Where possible, the Court has relied on the undisputed facts in the parties' 56(a) submissions. However, direct citations to the record have also been used where relevant facts were not included in any of the parties' statements of material facts, or where the parties did not accurately characterize the record.

1.   **Plaintiff's Discovery of Embezzlement**

In November 2019, Plaintiff brought to the attention of Ed Seeker, Executive Vice President of Stores, that a Mate (assistant manager) in one of her stores had been processing fraudulent refunds. (Def.'s 56(a) ¶ 7.) Plaintiff discovered this embezzlement through the review of refund reports that were sent to Captains and RVPs on a weekly and monthly basis. (*Id.* ¶ 8.) The employee's fraudulent activity, which occurred over a period of several months, resulted in a total loss of more than $75,000 for Trader Joe's. (*Id.* ¶ 9.)

When questioned about her investigation of the embezzlement and review of the refund reports by Seeker, Plaintiff represented that she had been looking at the reports "every few weeks." (*Id.*) Seeker expressed that had Plaintiff reviewed the refund reports more regularly, she would have noticed the theft sooner, especially since the store where the fraud was occurring "was notorious to have high refunds." (*Id.* ¶ 10; Seeker Dep., ECF No. 34-2 at 80:14.) As a result, Plaintiff received a written warning on December 2, 2019, which read in part, "[I]t is difficult to understand how you missed this situation for 18 months." (Def.'s 56(a) ¶ 14; ECF No. 30-3 at 46.) Two weeks later, she received an addendum to the warning that stated that Plaintiff was to complete "a specific educational process . . . focused on all of the information provided to a Regional and demonstrate that [she] understand the messaging and [is] able to identify appropriate actions needed." (Def.'s 56(a) ¶ 14; ECF No. 30-3 at 47.)

In the weeks following receipt of the written warning, Plaintiff was only digging in deeply into the refund reports every few months unless the numbers seemed off and was required to report to Seeker on a weekly basis to ensure that she was reviewing the reports as expected. (Def.'s 56(a) ¶¶ 15, 16.) On January 17, 2020, Plaintiff received her 2019 evaluation, in which Seeker commented, "In this case you never opened store #529's specific report that

3

would have alerted you to the theft. It was virtually impossible to miss." (*Id.* ¶ 17; ECF No. 30-3 at 42.) In the self-evaluation portion, Plaintiff reflected, "I did not do a regular weekly deep dive on all stores, instead relied far too heavily on the Captains to look at the reports and advise me of any concerns." (ECF No. 30-3 at 39.) Plaintiff was not demoted nor fired for her oversight. (Def.'s 56(a) ¶ 13.) Additionally, on February 2, 2020, Seeker informed Plaintiff that he was confident she knew how to review the weekly reports and would no longer need to send him the reports. (Pl.'s 56(a) ¶ 11.)

### 2.     Plaintiff's Vacation and the Onset of the COVID-19 Pandemic

On February 4, 2020, Plaintiff booked a vacation to Cancún, Mexico to celebrate her wedding anniversary with her husband, stepdaughter, and stepdaughter's fiancé from March 16-23, 2020, and informed Seeker regarding the same. (*Id.* ¶¶ 13, 14; Def.'s 56(a) ¶ 19.) Plaintiff reminded Seeker of the trip again on March 4, 2020. (Def.'s 56(a) ¶ 20; ECF No. 30-3 at 49.) At this time, Seeker was out on medical leave. (Seeker Dep., ECF No. 30-3 at 86.)

Plaintiff's trip to Mexico was to take place amid what she referred to as "Coronavirus craziness." (Def.'s 56(a) ¶ 22; Flanagan Dep., ECF No. 30-3 at 23.) The World Health Organization declared COVID-19 a pandemic on March 11, 2020.[2] Trader Joe's employees were considered "essential workers," and the situation was escalating and changing by the day. (Def.'s 56(a) ¶ 25.) Prior to Plaintiff's vacation, Trader Joe's even issued communications regarding steps to take in the event a COVID-positive crew member was in a store. (*Id.* ¶ 27.) Plaintiff discussed the situation in her stores and her upcoming vacation on a March 12th phone call with Shannon Curran, a fellow RVP, who expressed concern about the potential closing

---

[2] https://www.cdc.gov/museum/timeline/covid19.html.

of the U.S.-Mexico border. (ECF No. 30-4 at 3.) Plaintiff replied, "[T]here [a]re worse places to get stuck." (*Id.*)³

During a March 13 conference call with the RVPs, Plaintiff learned that Ben Myers, an Executive Vice President, would be filling in during Seeker's leave. (*Id.* ¶¶ 31, 32.) Myers instructed the RVPs to not travel together, to stay home if they were sick, and to "minimize travel where [they] can." (*Id.* ¶ 32; ECF No. 30-3 at 51.) Plaintiff did not ask Myers to further elaborate on the travel instructions, nor did she tell Myers about her trip on the call. (Def.'s 56(a) ¶ 33.) On March 15, 2020, the day before she was scheduled to leave for vacation, Plaintiff emailed Myers:

> As I am loading my car, I just realized that I did not let you know that I am away next week. It was approved time away long before the virus outbreak and had talked with Ed about the time a few weeks ago. I certainly realize it is not ideal timing and although Ylana is covering me, I will have access to my phone and email. Believe it or not, I'm going to a place that has no reported cases and has not been impacted by the virus (Cancun). I went back and forth with my family and they voted to move forward with the trip (I was out voted).

(*Id.* ¶ 36; ECF No. 30-3 at 52.) Myers responded, "Okay, good luck!" (ECF No. 30-3 at 52.) The next morning, on March 16, Plaintiff sent an email to her store Captains that began, "So I guess I'm going to Mexico[,]" provided instructions for reporting COVID-19 testing, and suggested that they "try to have some fun with [their] team." (Def.'s 56(a) ¶ 38; ECF No. 30-3 at 53.) Plaintiff departed for Mexico later that day. (Pl.'s 56(a) ¶ 17.)

Plaintiff received numerous emails about store shutdowns, customer complaints, and other issues relating to COVID-19 overnight, which prompted her to begin to make plans to return to the United States on March 17. (Flanagan Dep., ECF No. 30-3, at 30; Def.'s 56(a) ¶

---

³ Plaintiff does not dispute Curran's statements. (Def.'s 56(a) ¶ 30.)

5

39.) However, Plaintiff was unable to depart Mexico until Friday, March 20. (Def.'s 56(a) ¶ 39.)

### 3. Plaintiff's Termination

The day after Myers received the news that Plaintiff was leaving on vacation to Mexico, he brought Plaintiff's email to Jon Basalone, President of Stores, for his review. (*Id.* ¶ 40.) After consulting with Myers, Kathryn Cahan, General Counsel, and Laurie Mead, Vice President of Human Resources, Basalone decided that Plaintiff should be terminated for failing to support her stores in the middle of a "national emergency." (Basalone Dep., ECF No. 30-3 at 97-99.) Basalone further decided that Plaintiff should be notified of her termination immediately so that the crew members in her stores could be reassured that they had leadership. (Def.'s 56(a) ¶ 46.) On March 18, 2020, Plaintiff received a text message from Myers that stated:

> Tracy, based on [your] recent performance and decision to take a vacation during the current circumstances, we are ending your employment effective today. We will work out a time to gather your equipment when you get back into the country. Feel free to call/text me or Laurie Mead if you have any questions. Ben.

(*Id.* ¶ 47; ECF No. 30-3 at 54.) Plaintiff asked for reconsideration of Trader Joe's decision to terminate her that same day, and again on March 20 and April 13 (Def.'s 56(a) ¶¶ 48-50), but Trader Joe's decision remained unchanged. (ECF No. 30-3 at 63.)

### B. Procedural History

On September 23, 2020, Plaintiff filed complaints with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunities Commission, alleging that Defendant engaged in gender discrimination when it terminated her from her position at Trader Joe's. (Compl. ¶ 6.) She was issued a Right to Sue letter on March 24, 2021,

6

and filed the instant action on June 4, 2021. (*Id.* ¶ 7.) Defendant moved for summary judgment as to all claims on September 29, 2022. (ECF No. 30.)

## II.     LEGAL STANDARD

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[4] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion*

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

7

*Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Anderson* 477 U.S. at 249–50; *Celotex*, 477 U.S. at 322–23. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which a jury reasonably could find for the non-moving party. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## III. DISCUSSION

Plaintiff asserts claims of gender discrimination under Title VII and the CFEPA, which make it unlawful to terminate an employee "because of" her sex. *See* 42 U.S.C. § 2000e-2(a)(1); Conn. Gen. Stat. § 46a-60(b)(1). Courts analyze employment discrimination claims brought under these statutes with the "now-familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Kovaco v. Rockbestos-Suprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016); *see also Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019) (CFEPA).

### A. Prima Facie Case

"Under the *McDonnell Douglas* test, '[f]irst, the plaintiff must establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bjorklund v. Golub Corp.*, 832 F. App'x 97, 98 (2d Cir. 2021) (quoting *Weinstock v. Columbia Univ.*, 22 F.3d 33, 42 (2d Cir.

8

2000)). The fourth element of the *prima facie* case "may be proven by showing that a man similarly situated was treated differently." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997); *see also Cianciosi v. Home Depot U.S.A., Inc.*, No. 99-7289, 1999 WL 1024119, at *2 (2d Cir. Oct. 28, 1999) (stating that the plaintiff must "offer[] evidence that she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred").

Plaintiff seeks to demonstrate Trader Joe's discriminatory intent by showing that five male RVPs "with negative performance issues were demoted and reassigned, but not terminated" (Compl. ¶ 48), and that two male RVPs "who took vacations during the Coronavirus pandemic [] were not terminated." (*Id.* ¶ 50.) In response, Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination because the comparators she identifies are not similarly situated. (ECF No. 30 at 2; ECF No. 30-1 at 15-19.) The Court agrees with the defendant.

"[W]here a plaintiff seeks to make out her *prima facie* case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (citing *Shumway*, 118 F.3d at 64). A plaintiff need not show that she is similar to the comparator in all respects, but "the individuals with whom [the] plaintiff attempts to compare herself must be similarly situated in all material respects." *Doe v. City of N.Y.*, 473 F. App'x 24, 27 (2d Cir. 2012). "In the context of employee discipline, [ ] the plaintiff and the similarly situated employee[s] must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015).

9

As Defendant argues and as the record demonstrates, the RVPs Plaintiff identifies in her Complaint are not similarly situated comparators in that none of them took an international vacation at the height of the COVID-19 pandemic after first receiving a written warning or having negative performance issues. Plaintiff concedes the same. (*See* Flanagan Dep., ECF No. 30-3 at 22-23 ("Q: Okay. Who are the numerous other males that you claim engaged in bad decision-making who are still there whose bad decision-making you equate to your decision-making according to Trader Joe's? A: Well, in terms of if we're saying they went on vacation during a time where there was illness going on, that I don't have[.]").)

The five employees who Plaintiff claims were demoted after negative performance issues—Michael Krause, Greg Paquet, Rory Violette, Rich Mills, and Jay Hughes—arguably fared *worse* than Plaintiff after she failed to discover the embezzlement in a timely fashion; unlike those employees, Plaintiff only received a written warning, and was not demoted or terminated. (Def.'s 56(a) ¶ 13; ECF No. 30-1 at 19.) Aside from Plaintiff's speculation, there is no evidence demonstrating why these men were demoted and not terminated. *See* Flanagan Dep., ECF No. 30-3 at 33 ("Q: Do you have any statements that you can point to specifically from others about why these gentlemen were demoted, not terminated? A: No. Just, again, conversation with other female leaders about the general state of the boys club for Trader Joe's.").

The two male RVPs named in the Complaint who allegedly took vacations during the pandemic and were not terminated—Perry Zetterstens and Chris Maguire—are also not similarly situated to Plaintiff as there is no indication from the record that they had negative performance issues prior to taking their respective vacations. *See Padilla v. Harris*, 285 F. Supp. 2d 263, 270 (D. Conn. 2003) ("Prior disciplinary problems may be sufficient to justify

10

differential treatment of otherwise similarly situated employees."). Nor did they travel internationally after the March 13 conference call on which Myers advised the RVPs to minimize travel. (ECF No. 30-1 at 17.) First, Zetterstens, who was the only individual Plaintiff named as being similarly situated during her deposition, traveled domestically the week before Plaintiff's trip, and was able to cut his trip short immediately after being informed by Ylana Ebba, a fellow RVP, that the situation was getting "precarious" in stores. (Flanagan Dep., ECF No. 30-3, at 18, 26-27; Ebba Dep., ECF No. 30-3, at 118.) As for Maguire, Plaintiff admitted that she could not confirm that he took a vacation during the pandemic. (*See* Flanagan Dep., ECF No. 30-3, at 18 ("Q: How do you know that he traveled on a vacation during the pandemic after people were being told, minimize travel? A: I don't know that he took – I don't know what he did on his time off. Q: Okay. So you mentioned him in your charge, but you don't really know if it's the same situation. Is that what you're telling me? A: Correct.").) Further, Plaintiff cannot identify any males who went on vacation after the March 13 conference call (and who were not disciplined). (*Id.* at 19.) Plaintiff has thus failed to proffer a comparator who is similarly situated in all material respects, as required.

Because Plaintiff is unable to identify similarly situated comparators, the Court finds that she has failed to establish a *prima facie* case of discrimination on the basis of gender. *See Lodato v. DeJoy et al.* No. 21-CV-1424 (RMS), 2024 WL 216655, at *7 (D. Conn. Jan. 19, 2024) (finding that male comparator who did not have disciplinary history was not similarly situated to female plaintiff); *Padilla*, 285 F. Supp. 2d at 263 (holding that a proposed comparator with a lesser disciplinary history was not similarly situated to the plaintiff).

### B. Pretext

Even assuming that Plaintiff has established a *prima facie* case of discrimination, Defendant has offered a legitimate, nondiscriminatory reason for terminating her. It is undisputed that Plaintiff received a written warning for failing to timely detect $75,000 worth of embezzlement and then took a vacation in the midst of "Coronavirus craziness," despite being instructed to minimize travel. In response, Plaintiff fails to provide any evidence that would allow a reasonable jury to find that using her vacation and recent negative performance as a basis for termination was a pretext for discrimination, and only argues that Trader Joe's proffered reason for her termination lacks credibility because its justification for the termination has shifted over time. (ECF No. 34 at 18-20.) The Court finds this argument to be without merit. Plaintiff further contends that the Defendant's reason for her termination is pretextual because it lacks business sense. (*Id.* at 20-21.) "Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010). Accordingly, Plaintiff's claims fail as a matter of law. *See DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 26 (2d Cir. 2020) (dismissing plaintiff's Title VII claim where the plaintiff "failed to present any evidence" to show that the stated reason for the plaintiff's termination was pretextual); *Louis v. Brooklyn Botanic Gardens*, 487 F. App'x 603, 604 (2d Cir. 2012) (dismissing plaintiff's Title VII claim where they "did not present sufficient evidence from which a reasonable jury could find that this reason was pretextual").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Trader Joe's Motion for Summary Judgment (ECF No. 30) is **GRANTED**. Judgment is entered in the defendant's favor. As there are no remaining claims, the Clerk is directed to close this case.

**SO ORDERED.**

Hartford, Connecticut
February 8, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge